# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

KATHERINE LOUISE ALLEN,

              Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

              Defendant.

No. C14-4008-MWB

**REPORT
AND RECOMMENDATION**

—————————————

Plaintiff Katherine Louise Allen seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Allen contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be reversed and remanded for further proceedings.

## I.    BACKGROUND

Allen was born in 1961 and has a high school degree. AR 32, 36. She has past relevant work as a meat trimmer. AR 26. She filed applications for Disability Insurance Benefits (DIB) and for SSI on March 13, 2007. AR 13, 40-50. Both applications were denied on April 15, 2010. *Id.* Allen did not seek further review. *Id.* However, she filed a new application for SSI on August 31, 2010, alleging disability beginning September 15, 2009. AR 13. That application was denied initially and on reconsideration. AR 13. Allen then requested a hearing before an Administrative Law

Judge (ALJ) and on November 20, 2012, ALJ John D. Moreen held a hearing during which Allen and a vocational expert (VE) testified. AR 13, 51-81.

On November 29, 2012, the ALJ issued a decision finding Allen was not disabled since August 31, 2010, the date her application was filed. AR 13-26. Allen sought review of this decision by the Appeals Council, which denied review on November 22, 2013. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. § 416.1481.

On January 22, 2014, Allen filed a complaint (Doc. No. 3) in this court seeking review of the Commissioner's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant

is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the

claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove

disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. ALJ'S FINDINGS

The ALJ made the following findings:

(1)     The claimant has not engaged in substantial gainful activity since August 31 2010, the current SSI application date (*see*, e.g. Exhibit B3D) (20 CFR 416.971 *et seq.*).

(2)     The claimant has the following severe combination of impairments: dextroscoliosis (Exhibit B1F, p.2; Exhibit B2F, pp.4,17; Exhibit B7F, pp.3,4; Exhibit B17F) with discrepant leg lengths (Exhibit B7F, p.3); a Generalized Anxiety Disorder (Exhibit B4F, p.4); a Depressive Disorder, not otherwise specified (Exhibit B4F, p.4), a history of acute and chronic alcohol consumption (Exhibit B2F, p.4), in reported remission (testimony; Exhibit B4F, p.4); and a history of cocaine dependence, in reported remission (Exhibit B4F, p.4) (20CFR 416.920(c)).

(3)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she cannot climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; she must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc; and she can carry out simple to moderately complex instructions.

(5)     The claimant is capable of performing past relevant work as a Meat Trimmer (20 CFR 416.965).

(6)    The claimant has not been under a disability, as defined in the Social Security Act, since August 31, 2010, the date the application was filed (20 CFR 416.920(g)).

AR 15-26.

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health &*

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

Allen raises the following arguments in contending that the ALJ's decision is not supported by substantial evidence:

(1)    The ALJ erred by determining Allen's asthma was not severe.

(2)    The ALJ erred by failing to develop the record and evaluate the medical evidence accordingly.

(3)    The ALJ erred by discrediting Allen's subjective allegations.

I will address these arguments separately.

## 1.   Asthma

### A.   Applicable Standards

At Step Two, the ALJ must consider whether a medically determinable impairment is "severe." 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). If the impairment would have no more than a minimal effect on the claimant's ability to work, it is not severe. *Page*, 484 F.3d at 1043.

It is the claimant's burden to establish that his or her impairment or combination of impairments is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby*, 500 F.3d at 708 (internal citation omitted). When a claimant has multiple impairments, "the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

In determining the severity of a medically determinable impairment, the ALJ must consider a claimant's symptom-related limitations and make a credibility finding on his or her alleged limitations. *See Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001) (the ALJ erred at Step Two by failing to evaluate the claimant's subjective complaints); *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996). While the ALJ may conclude that the medical evidence does not support a claimant's subjective allegations, this is only one

factor that should be considered. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) ("The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints."). The ALJ is required to explicitly discredit a claimant and provide reasons. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("[A]n ALJ who rejects such [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints").

### B.    Analysis

Allen argues the ALJ improperly categorized her asthma as non-severe. However, in reviewing the record closely, I find there is substantial evidence supporting that conclusion. The ALJ discredited Allen's subjective complaints regarding her asthma and cited to specific medical evidence in the record to explain his decision. The ALJ stated:

> Although Ms. Allen has asthma, it is not severe. She testified that her last emergency room visit was two years ago. She takes Albuterol for asthma; she also uses an inhaler and a nebulizer. She uses all of them daily (Testimony). The evidence shows that in January and March 2011, the claimant was not taking medication for asthma (Exhibit B7F, p.2; Exhibit B10F, p.12). Medication was re-started in April 2011, when she had bronchitis (Exhibit B10F, pp.9-11). She continued to wheeze in May 2011, but she was not using an inhaler or a nebulizer (Exhibit B10F, p.7). By May 2012, the claimant's lungs were clear (Exhibit B15F, p.4). The evidence fails to show that this condition imposes functional limitations on any ongoing basis.

AR 16. Having carefully reviewed the record, I find the ALJ's determination that Allen's asthma is not a severe impairment is supported by substantial evidence on the record as a whole.

## 2.    Evaluation of the Medical Evidence

### A.    Applicable Standards

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b), which is identical to 20 C.F.R. § 416.927(b)). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Other relevant evidence includes medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

*Acceptable Medical Source Opinions.* Medical opinions can come from a treating source, an examining source or a non-treating, non-examining source (typically a state agency medical consultant who issues an opinion based on a review of medical records). Medical opinions from treating physicians are entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). Nonetheless, if the ALJ finds that a treating physician's medical opinion as to the nature and severity of the claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010). Note, however, that a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an

issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

At the other end of the medical-opinion spectrum are opinions from non-treating, non-examining sources: "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). This does not mean, however, that such opinions are to be disregarded. Indeed, "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal quotations and citations omitted). Unless a treating source's opinion is given controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 416.927(e)(2)(ii).

In the middle of the spectrum are opinions from consultative examiners who are not treating sources but who examined the claimant for purposes of forming a medical opinion. Normally, the opinion of a one-time consultative examiner will not constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000).

Ultimately, it is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (citing *Bentley v. Shalala*, 52 F.3d 784, 785-87 (8th Cir. 1995)).

***Other Opinion Evidence.*** Opinion evidence may also come from health care providers who do not fall within the Commissioner's definition of an "acceptable medical

source," such as nurse practitioners and chiropractors.[1]  Social Security Ruling 06-03p nonetheless requires the ALJ to give consideration to such opinions.  That ruling includes the following statements:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and 416.927(d).

> \* \* \*

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:

> - Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists;

> \* \* \*

> Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable

---

[1] That definition identifies various "acceptable medical sources" who can "provide evidence to establish an impairment." *See* 20 C.F.R. § 416.913(a).  Nurse practitioners and chiropractors are not included. *Id.*

12

medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity.

* * *

Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

* * *

The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Among other things, this ruling means a chiropractor's opinion is not a "medical opinion," is not entitled to controlling weight and cannot establish *the existence of* a medically-determinable impairment. However, that opinion *can* be used as evidence of the severity of an impairment and how the impairment affects the individual's ability to function. An ALJ must evaluate the opinion with reference to the same factors that apply to other medical sources, including:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
- Any other factors that tend to support or refute the opinion.

*See* 20 C.F.R. § 416.927(c). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

**The ALJ's Duty.** Obviously, medical opinions and other forms of medical evidence do not magically appear on the ALJ's desk in advance of a hearing. Instead, the ALJ has a duty to fully and fairly develop the record, even when the claimant is represented by counsel. *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)). This duty includes "arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." 20 C.F.R. § 416.945(a)(3). "Because the social security disability hearing is non-adversarial … the ALJ's duty to develop the record exists independent of the claimant's burden in the case." *Stormo,* 377 F.3d at 806 (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)).

### B.     The Record

The record contains evidence from Scott Patrick, D.C., Allen's chiropractor, Christopher Jacobs, APRN, a treating nurse practitioner, Teresa Muller, APRN, also a treating nurse practitioner, Terena Kring, APRN, a consultative physical RFC examiner, Denise Marandola, Ph.D., a consultative mental RFC examiner, two state agency psychologists (Jennifer Ryan, Ph.D. and Philip Laughlin, Ph.D.) and two state agency physicians (Dennis Weis, M.D. and Tracey Larrison, D.O.). Allen's arguments focus on Dr. Patrick and Ms. Kring.

***Dr. Patrick.*** Allen saw Dr. Patrick for chiropractic care on numerous occasions beginning in 2007. AR 377. Dr. Patrick's records from July 15, 2008, through October 16, 2009, show he treated Allen repeatedly for back pain due to scoliosis. AR 377-435. On August 17, 2011, and November 14, 2012, Dr. Patrick wrote letters confirming Allen was being treated for back pain. AR 359, 376. The ALJ discussed these letters and interpreted them as opining that Allen is unable to perform light work. AR 25. However, Dr. Patrick's actual treatment records were not part of the record at the time the ALJ issued his decision. AR 5, 25, 27-30. Likewise, while Dr. Patrick wrote additional letters on November 1, 2010, and March 28, 2012, outlining his diagnosis and treatment of Allen's back pain and scoliosis, AR 377, 438-439, those letters were not in the record when the ALJ issued his decision. AR 5, 27-30. Instead, like Dr. Patrick's treatment records, the two additional letters were later submitted to the Appeals Council and added to the record. AR 4-5.

***Ms. Kring.*** On January 18, 2011, the State of Iowa Disability Determination Services Bureau sent Allen for a comprehensive history and physical exam. AR 323. Ms. Kring, a nurse practitioner, completed the exam. AR 322-328. Ms. Kring concluded Allen was capable of lifting and carrying 10 pounds only occasionally and could sit, stand or walk for periods of only 15-30 minutes at a time. AR 325. Ms. Kring's assessment was approved by M.A. Swenson, M.D. AR 325, 327.

### C.    *The ALJ's Findings*

The ALJ determined that Dr. Patrick's and Ms. Kring's opinions were entitled to little weight. AR 24-25. With regard to Ms. Kring, the ALJ pointed to instances in which she "credited the claimant's subjective complaints, without much in the way of critical evaluation." AR 24. For example, Allen stated that she can walk to the library, but was not asked about the distance. *Id*. Likewise, the ALJ found contradictions between Ms. Kring's findings and Allen's limited use of pain medications. AR 20, 24-

25. The ALJ also expressed concern about the fact that Ms. Kring, as a nurse practitioner, is not an acceptable medical source while Dr. Swenson, who also signed the report, did not examine Allen. AR 25.

By contrast, the ALJ gave "greatest weight" to the opinions of state agency medical consultants (who likewise did not examine Allen). *Id.* Dr. Weis, for example, submitted a physical RFC assessment dated February 9, 2011, in which he found that Allen could lift or carry 20 pounds occasionally and 10 pounds frequently. AR 330. He further found that Allen can stand and/or walk for six hours of an eight-hour workday and that she can also sit for six hours during an eight-hour workday. *Id.* While Dr. Weis noted Ms. Kring's contrary opinion, he stated that her opinion appeared to be based on Allen's subjective complaints without supporting medical evidence. AR 336. He noted, for example, that Allen has had limited medical intervention and uses only over-the-counter medication. *Id.* The ALJ concluded that Dr. Weis's opinion (which was later adopted by another state agency physician on reconsideration (AR 354)), was more consistent with the record as a whole. AR 25.

As for Dr. Patrick, the ALJ discredited his opinion for lack of substantiating evidence, stating:

> The claimant testified that since about 2007, she uses a cane prescribed by her chiropractor. She also testified that she sees her chiropractor once a week. However, she did not submit evidence of chiropractic treatment and there is no evidence that she was ever prescribed a cane. Ms. Allen is represented by any [sic] attorney, and I anticipate that he submitted the evidence he wants me to consider.

*****

> On August 17, 2011, Dr. Scott Patrick, at Tri-State Physicians & Physical Therapy Clinic, stated that the claimant continues to treat there for chronic back pain, and remains with the same limitations as he described earlier (Exhibit B14F). But no prior letter was submitted. On November 14, 2012, he stated that he saw the claimant on September 26, 2012, when she remained with the same symptoms as "she was previously treated for" (Exhibit B18F). He wrote: "In my opinion all her restrictions, prognosis

16

and diagnoses are the same as they were since her last visit" (*id.*). Assuming that the letters suggest that the claimant is unable to perform the range of light work set out at Finding #4, above, I give little weight to the opinion. Dr. Patrick wrote his letters on letterhead from the Tri-State Physicians & Physical Therapy Clinic (Exhibits B14F and B18F). However, the records from that facility document treatment with Teresa Mullen, a nurse practitioner, and Paul D. Peterson, D.O. (Exhibit B10F). The records also include an x-ray (Exhibit B B17F) [sic]. The claimant testified that Dr. Patrick is a chiropractor. Consequently, he is not an acceptable medical source to establish a medically determinable impairment (20 CFR 416.913), although he may offer an opinion (20 CFR 416.913(d)). Under SSR 06-03p, I must consider all evidence, including opinion evidence from non-acceptable sources (see also 20 CFR 416.927(b)), and I must assign weight to such opinion using the criteria set out in 20 CFR 416.927(d). Under these guidelines, Chiropractor Patrick's implicit opinion that the claimant has significant limitations merits little weight because the file contains no evidence of chiropractic treatment. Further, as discussed above, there is no evidence that anyone at Tri-State Physicians & Physical Therapy Clinic examined the claimant's back. Accordingly, chiropractor Patrick's opinion is unsupported with relevant clinical evidence. He presumably saw the x-rays at Exhibit B17F, but absent a clinical examination, any opinion about the claimant's abilities and limitations would be speculative. Absent evidence that the claimant has a relationship with Chiropractor Patrick that would afford him special knowledge of her condition, his opinion does not outweigh that of a more qualified source.

AR 22, 25 [emphasis added]. Thus, while noting that Dr. Patrick is not an acceptable medical source, the ALJ discredited Dr. Patrick's opinion largely due to the absence of records showing that he treated Allen.

## D.    Analysis

The ALJ correctly noted that Dr. Patrick and Ms. Kring are not "acceptable medical sources." However, chiropractors and nurse practitioners are "other" medical sources whose opinions must be considered. *See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Indeed:

[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is

17

not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Id.* Thus, it was appropriate for the ALJ to consider Dr. Patrick's and Ms. Kring's opinions.

With regard to Dr. Patrick, the ALJ's primary stated reason for discrediting his opinion is troubling. As noted above, a social security hearing is non-adversarial. *Stormo,* 377 F.3d at 806. This means, among other things, that the ALJ has a duty to fully and fairly develop the record, even when the claimant is represented by counsel. *Nevland*, 204 F.3d at 857. This duty includes "arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." 20 C.F.R. § 416.945(a)(3). The ultimate goal of the proceeding is to ensure that "deserving claimants who apply for benefits receive justice." *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994).

Here, based on Dr. Patrick's letters and Allen's testimony, the ALJ was clearly aware that Dr. Patrick had a treatment relationship with Allen. AR 58-59, 66, 359, 376. Upon discovering the lack of treatment records from Dr. Patrick, the ALJ was obligated to make "every reasonable effort" to help Allen obtain those missing records. 20 C.F.R. § 416.945(a)(3). Instead, he simply noted that Allen was represented by an attorney and made an assumption that the attorney would have "submitted the evidence he wants me to consider." AR 22.

This is unacceptable. While it is not clear *why* the records were missing, simply assuming that Allen's attorney did not want them to be considered was an obvious breach of the ALJ's duty to develop the record. At minimum, the ALJ should have made some inquiry upon discovering that Dr. Patrick's treatment records were not in evidence.

The question remains whether this breach requires remand. An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the decision. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial. *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001). Moreover, because the Appeals Council made Dr. Patrick's treatment records part of the evidence on review, I must consider the entire record, including the new evidence, to determine if there is substantial evidence to support the ALJ's determinations. *See Browning v. Sullivan*, 958 F.2d 817, 823 n.4 (8th Cir. 1992).

Here, it is obvious that the ALJ's failure to develop the record was unfair and prejudicial. The ALJ relied largely on the resulting lack of evidence of chiropractic treatment to discredit Dr. Patrick's opinion. AR 25. Indeed, the ALJ stated that without evidence that Dr. Patrick "had a relationship with claimant that would afford him special knowledge of her condition, his opinion does not outweigh that of a more qualified source." *Id.* AR 25.

Had Dr. Patrick been only a minor, infrequent treating source, perhaps the ALJ's failure could be considered harmless. However, the ALJ noted that Allen had been seeing Dr. Patrick once a week and that Dr. Patrick had prescribed her use of a case in 2007 – five years before the hearing. AR 22. Dr. Patrick's records, as later submitted to the Appeals Council, total over 60 pages and reflect treatment dating back to 2008. AR 377-439. Their omission from the record was not inconsequential.

Having considered the entire record, including the new evidence, I find that the ALJ's rejection of Dr. Patrick's opinion is not supported by substantial evidence. It is quite possible that had the ALJ obtained and reviewed Dr. Patrick's records, his evaluation of Dr. Patrick's opinion would have been different. At minimum, the ALJ would have had the opportunity to provide other, good reasons for discrediting that opinion.

This error impacts the ALJ's evaluation of other medical opinions, as well. For example, in discrediting Ms. Kring's opinion and giving great weight to Dr. Weis's opinion, the ALJ stated that Ms. Kring's opinion was not consistent with the medical evidence while Dr. Weis's was. AR 24-25. Of course, at that time the medical evidence did not include Dr. Patrick's treatment records. Adding those substantial records to the mix casts doubt on all of the ALJ's conclusions concerning medical opinion evidence.

These circumstances compel that I recommend remand, as the ALJ's RFC determination is not supported by substantial evidence in the record as a whole. On remand, the ALJ should be directed to consider the entire record, including Dr. Patrick's treatment records, re-weigh all of the medical opinions and provide good reasons, supported by substantial evidence in the record, for the weight given to each.

### 3.     Allen's Credibility

#### A.     Applicable Standards

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). In assessing a claimant's credibility, the ALJ must consider "the claimant's prior work history; daily activities, duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (citing *Polaski*, 739 F.2d at 1322). "Other relevant factors include the

claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 894 (8th Cir. 2000)). However, lack of objective medical evidence cannot be the sole reason for discounting a claimant's subjective complaints. *Mouser*, 545 F.3d at 638. An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2009). The ALJ does not need to discuss each *Polaski* factor as long as he or she "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not my role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (Citations and quotations omitted).

### B. Analysis

The ALJ discredited Allen's subjective testimony regarding the severity of her symptoms and aliments because the medical evidence did not support her testimony. AR 21-22. However, I have already determined that remand is required due to the ALJ's failure to fully develop the record by obtaining Dr. Patrick's treatment records. This error clearly impacts the consideration of Allen's credibility. For example, the ALJ stated that he discredited Allen's testimony regarding the level of her back pain because "there is no evidence of a musculoskeletal examination" at Tri-State. AR 21. However, had the ALJ developed a full and complete record, he would have had evidence that Dr.

Patrick, a chiropractor at Tri State, treated Allen for back and hip pain and performed multiple musculoskeletal exams. AR 359, 374-77, 438-39.

In short, in light of the fact that the record was not fully developed, the reasons the ALJ provided for discrediting Allen's testimony are not good reasons. On remand, the ALJ must revisit his evaluation of Allen's credibility in light of the entire record, including the new medical evidence.

### 4.    Is Allen Entitled to an Immediate Award of Benefits?

Allen argues that remand is not necessary, and that she should simply be awarded benefits, because the record clearly demonstrates that she is disabled within the meaning of the Act. Doc. No. 11 at 18-20. I disagree. While there is no doubt that the ALJ erred in failing to fully develop the record and in considering and weighing the medical sources, those errors do not entitle Allen to a finding that she is disabled. The court may enter an immediate finding of disability only if the record "overwhelmingly supports" such a finding, otherwise, the case is remanded for further administrative proceedings. *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000); *see also Benskin v. Bowen*, 830 F.2d 878, 885 n.2 (8th Cir. 1987) ("Usually, when the Secretary errs at a stage in the determination at which the burden is still on the claimant to prove she is entitled to benefits, the proper relief is to remand to the Secretary so he can resume consideration of the claim."). The record here does not "overwhelmingly support" a finding of disability. As such, remand is appropriate.

## VI.    CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Allen was not disabled be **reversed and remanded** for further proceedings and that judgment be entered against the Commissioner and in favor of Allen. On remand, the ALJ should consider the entire record, including Dr.

Patrick's treatment records, and re-weigh all of the medical opinions, providing good reasons supported by substantial evidence in the record for the weight given to each. In addition, the ALJ should reassess Allen's credibility in light of the entire record, including the new evidence. The ALJ should then consider what effect, if any, these determinations have on Allen's RFC and the ultimate issue of whether she is disabled within the meaning of the Act.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 23rd day of January, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE